UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DARREN W. BOLES

CIVIL ACTION

VERSUS

NO. 15-373-EWD

WAL-MART STORES, INC. AND
WAL-MART LOUISIANA, LLC

## RULING ON MOTION FOR SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment[1] filed by defendants, Wal-Mart Stores, Inc. and Wal-Mart Louisiana, LLC (collectively, "Defendants" or "Wal-Mart"). Plaintiff, Darren W. Boles ("Plaintiff") has filed an opposition,[2] and Wal-Mart has filed a reply.[3] For the reasons set forth herein, Wal-Mart's Motion for Summary Judgment[4] is GRANTED.[5]

### I.      Background

In this personal injury action, Plaintiff alleges he sustained injuries and damages after he slipped and fell on a clear liquid substance at Defendants' store located in Gonzales, Louisiana on or about July 30, 2014.[6] In his deposition, Plaintiff testified that he slipped and fell in the

---

[1] R. Doc. 14.

[2] R. Doc. 25.

[3] R. Doc. 29. In addition to supporting memoranda, Local Rule 56.1 requires a Motion for Summary Judgment to "be accompanied by a separate, short and concise statement of the material facts" that the movant contends are undisputed. Likewise, a party opposing summary judgment must also include, along with its opposition, "a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." Local Rule 56. Here, Defendants filed a Statement of Uncontested Material Facts in Support of Motion for Summary Judgment. R. Doc. 14-3. Plaintiff filed a Statement of Contested Material Facts along with his Opposition. R. Doc. 25-1.

[4] R. Doc. 14.

[5] On September 10, 2015, the parties filed a Consent to Proceed before the United States Magistrate Judge. R. Doc. 12. Therein, in accordance with the provisions of 28 U.S.C. § 636(c), the parties waived their right to proceed before a United States District Judge and consented to have a United States Magistrate Judge conduct any and all further proceedings in this case, including but not limited to the trial of the case and ordering the entry of judgment. R. Doc. 12.

[6] R. Doc. 1-1, ¶ 2. Specifically, Plaintiff alleges that "while walking down an aisle looking for seat-covers…he slipped and fell in a clear fluid substance on the aisle floor…." R. Doc. 1-1, ¶ 2. Plaintiff's briefing, as well as the deposition testimony of certain Wal-Mart employees, indicates that the "clear fluid substance" was tire protectant. See, R. Doc. 25, p. 1 ("Darren Boles was injured on July 30, 2014, when he slipped and fell in a puddle of tire protectant…."); R.

automotive department[7] while shopping for seat covers and floor mats for his truck.[8]  Although he testified that he was unable to determine what caused him to fall, he stated that he "had an oily-type substance on [his] body and clothes."[9]  During his deposition, he identified a photo of a clear liquid "with a smear mark" which he believed represented what the area of his accident looked like and agreed that the liquid looked "sort of splattered."[10]  He also testified that the area of the splatter was "[a] foot-and-a-half, 2 foot" big.[11]  He stated he had no idea how long the substance had been on the floor[12] and that he did not see anything before he slipped.[13]

Based on the foregoing testimony, Defendants argue that Plaintiff cannot establish that Wal-Mart created or had actual or constructive notice of the liquid on the floor prior to the slip and fall.[14]  Because Plaintiff cannot establish this necessary element of his claim, Defendants request the Court grant summary judgment in their favor.

In response, Plaintiff argues that circumstantial evidence establishes that Defendants had constructive notice of the condition.[15]  Specifically, Plaintiff argues that: (1) video surveillance

---

Doc. 25-3, pp. 16-17, September 14, 2015 Deposition of Wal-Mart, pp. 15:19-16:3 (identifying liquid as "Pro Shine Protectant.").

[7] R. Doc. 14-2, p. 3, August 10, 2015 Deposition of Darren Boles, p. 15:20-22.

[8] R. Doc. 14-2, p. 2, August 10, 2015 Deposition of Darren Boles, p. 14:14-18.

[9] R. Doc. 14-2, p. 5, August 10, 2015 Deposition of Darren Boles, p. 18:9-15.

[10] R. Doc. 14-2, p. 7, August 10, 2015 Deposition of Darren Boles, pp. 20:7-21:24.

[11] R. Doc. 14-2, p. 9, August 10, 2015 Deposition of Darren Boles, p. 23:1-8.

[12] R. Doc. 14-2, p. 10, August 10, 2015 Deposition of Darren Boles, pp. 23:19-24:3.

[13] R. Doc. 14-2, p. 11, August 10, 2015 Deposition of Darren Boles, p. 27:5.

[14] R. Doc. 14-1, p. 2.

[15] R. Doc. 25, p. 9.  The Court agrees with Plaintiff that the temporal element of constructive notice may be proved by circumstantial evidence.  *See*, *Beard v. Dollar General Stores, Inc.*, 2005 WL 399514, at *2 (E.D. La. Feb. 17, 2005) ("The temporal element of constructive notice must be proved by 'positive evidence,' either direct or circumstantial."); *Finley v. Racetrac Petroleum, Inc.*, 137 So. 3d 193, 198 (La. App. 2 Cir. 2014) ("A plaintiff is not required to prove by eyewitness testimony that the hazardous condition existed for a certain number of minutes prior to the fall.  Instead, the factfinder can reasonably infer from circumstantial evidence that it is more probable than not that the condition existed for such time prior to the accident that it should have been discovered and corrected.")  However, and as set

establishing a gap of approximately thirty minutes immediately prior to the accident in which no one spilled the protectant; (2) the size of the spill when considered in light of an adverse presumption that the substance leaked out of the bottle slowly; and (3) the lack of employees staffing the area and failure to perform inspections in accordance with Defendants' own inspection procedures provide sufficient circumstantial evidence to carry Plaintiff's burden of establishing that the spill existed for some period of time.[16]

## II.   Law and Analysis

### A.  Summary Judgment Standard

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of its pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1).  The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, summary judgment must be entered against the plaintiff, on a properly supported defense motion, if the plaintiff fails to make an evidentiary showing in its opposition to the motion sufficient to establish the existence of an element essential to its claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Without a showing sufficient to establish the existence of an element essential to a plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure

---

forth herein, the Court does not agree that the circumstantial evidence presented by Plaintiff here is enough to carry his burden.

[16] R. Doc. 25.

of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Id*. at 323 (quotations omitted).

## B.  Negligence Claims Against Merchants Under La. R.S. § 9:2800.6

Because the Court's subject matter jurisdiction is based on diversity, Louisiana substantive law applies. *Erie R. Co. v. Thompkins*, 304 U.S. 64, 78-80 (1938). "The substantive law determines which facts are material." *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

Louisiana Revised Statute § 9:2800.6 governs negligence claims brought against a merchant. *See*, *Davis v. Wal-Mart Stores, Inc.*, 774 So. 2d 84, 89 (La. 2000). The statute provides, in pertinent part:

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1)  The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2)  The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3)  The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

The statute goes on to define "constructive notice" to mean that "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the

4

employee knew, or in the exercise of reasonable care should have known, of the condition." La. R.S. § 2800.6(C)(1).  The Louisiana Supreme Court has held that "[b]ecause the statute is clear and unambiguous and contains no provision for shifting the burden to the defendant to prove his lack of culpability…it is the plaintiff's burden to prove each element of her cause of action under La. R.S. 9:2800.6(B)."  *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1082 (La. 1997).  This Court has granted summary judgment where a plaintiff could not set forth positive proof of a merchant's actual or constructive notice.  *See*, *Johnson v. Wal-Mart Stores, Inc.*, 2014 WL 7359051 (M.D. La. Dec. 23, 2014) (granting summary judgment where plaintiff had no information to suggest that defendant had actual notice of spill and presented insufficient evidence to establish that the spill existed for such a period of time to constitute constructive notice); *Fuller v. Wal-Mart Stores, LLC*, 2013 WL 4094319 (M.D. La. Aug. 13, 2013) (same).

In response to Defendant's Motion for Summary Judgment, Plaintiff does not argue that Wal-Mart created or had actual notice of the spill.  Instead, Plaintiff focuses on "the element of constructive notice found in Subsection B(2) of the Merchant Liability Act" and asserts that the circumstantial evidence raises a genuine issue of material fact as to whether Defendant had constructive notice of the spill.[17]

---

[17] R. Doc. 25, p. 9.  *See also*, R. Doc. 25-1, ¶ 4 ("Plaintiff does not contest defendant's assertion that he has no evidence Wal-Mart employees created the spill; however, plaintiff contests the assertion that Wal-Mart personnel did not have any information regarding the spill prior to his accident to the extent that Wal-Mart personnel should have had notice of the spill had they acted reasonably.").  Although this assertion seems to indicate Plaintiff contests Wal-Mart's actual notice, "actual notice requires some showing by the plaintiff that the defendant actually witnessed the hazardous condition/event, or at least some showing of actual knowledge of a routine and expected dangerous condition at a certain location."  *Johnson v. Wal-Mart Stores, Inc.*, 2014 WL 7359051, at *3 (M.D. La. Dec. 23, 2014) (citing *Blackman v. Brookshire Grocery Co.*, 966 So. 2d 1185, 1190-91 (La. App. 3 Cir. 2007) (defendant had actual notice of spill where fall occurred over three minutes after customer "noticed the spill, [and] walked to the front of the store to report it to management.")).  Plaintiff has presented no evidence to support a position that Defendant actually witnessed the spill or that the area of this accident was such that Wal-Mart should have expected a dangerous condition there.  Moreover, Plaintiff's assertion that Defendant "should have had notice" is in keeping with his assertion that "there is a genuine issue of material fact as to whether Wal-Mart had constructive notice of the spilled tire protectant prior to Mr. Boles' accident."  R. Doc. 25-1, ¶ 6.

5

### C.  Constructive Notice

"Constructive notice" "means the plaintiff has proven "that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. § 9:2800.6(C)(1).  "[B]ecause constructive notice is plainly defined to include a mandatory temporal element…a claimant must come forward with positive evidence that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence."  *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1082 (La. 1997).  "The statute does not allow for the inference of constructive notice absent some showing of this temporal element.  The claimant must make a positive showing of the existence of the condition prior to the fall.  A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall."  *Id*. at 1084.  In sum, "[a] claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute."  *Id*.

### 1.  Video Surveillance

Plaintiff relies on the deposition testimony of Jacob Para, an assistant manager at the store on the day of the accident, discussing security footage[18] of the area of the accident to support his position that at least thirty minutes passed between the spill of the tire protectant and Plaintiff's accident.[19]  Plaintiff asserts that his slip and fall occurred at 4:10 pm.[20]  As Plaintiff explains:

> From 3:42 pm to 3:43 pm until 4:07 an individual in an orange shirt is seen walking down the aisle and past where the spill occurred, but Mr. Para agreed that the individual appears to walk through the area and does not appear to touch any of the items on the shelves.  No

---

[18] Plaintiff did not submit, and the Court has not reviewed the security footage at issue.

[19] *See*, R. Doc. 25, pp. 4-5.

[20] R. Doc. 25, p. 5.

safety sweeps occurred from 3:42 until 4:07, despite procedure calling for one at 4:00 pm.  Para agrees that **if the individual in the orange shirt did not spill the tire protectant, that the spill would have been on the floor for more than thirty minutes prior to Mr. Boles's accident, assuming no one entered and exited the aisle from the other direction which would have been off camera**.[21]

The Court finds Plaintiff's interpretation of the video surveillance and his conclusion that at least a thirty minute gap in time existed between the spill and Plaintiff's accident to be unpersuasive.

First, the video surveillance does not show Plaintiff's fall[22] or the section of the aisle where the accident occurred.[23]   Courts considering such evidence have found it insufficient to carry Plaintiff's burden of establishing constructive notice.  *See*, *Taylor v. Wal-Mart Stores, Inc.*, 464 Fed. Appx. 337, 339 (5th Cir. 2012) (affirming district court's conclusion that surveillance video was not sufficient to establish constructive notice where "video merely shows the passage of time and lacks any visual evidence of a wet substance on the floor.  The video does not show someone or something creating the wet substance; it does not show others slipping or avoiding the area; it shows no one making a failed attempt to clear or secure the area."); *Adams v. Dolgencorp, LLC*, 559 Fed. Appx. 383, 386 (5th Cir. 2014) (refusing to accept plaintiff's temporal inference "where footage does not show the substance nor the area of the floor on which the substance was spilled."); *Demouy v. Sam's Wholesale, Inc.*, 2011 WL 2981117, at *2 (La. App. 1 Cir. June 10, 2011) (affirming summary judgment where plaintiff argued that surveillance video did not show any substance or object hitting the floor for two minutes and eighteen seconds prior to plaintiff's fall and therefore condition must have existed prior to that time).  *See also*, *Fuller v. Wal-Mart Stores*,

---

[21] R. Doc. 25, p. 5.  Emphasis added.

[22] R. Doc. 25-5, p. 42, January 29, 2016 deposition of Jacob Para, pp. 41:12-14.

[23] R. Doc. 25-5, p. 49, January 29, 2016 deposition of Jacob Para, pp. 49:5-15 (discussing video footage of people who did not walk far enough down aisle to "go out of the frame" and therefore "never walked to the area where the slip occurred.").

*LLC*, 2013 WL 4094319, at *6 (M.D. La. Aug. 13, 2013) ("Fatally absent from Plaintiffs' description of the video – which was not provided to the Court – is any allegation that it actually shows the puddle of chicken blood on the floor and/or any Wal-Mart employee nearby.  Absent this allegation, this video does little more than establish that the bakery department existed prior to the fall.").

Second, in order to accept Plaintiff's assertion that the liquid had been on the floor for at least thirty minutes prior to Plaintiff's accident, this Court would have to make a number of impermissible inferences, including that the "individual in the orange shirt" did not spill the liquid on which Plaintiff slipped, that the bottle didn't spill or fall for some other reason, and that someone off camera did not spill the liquid.  Such speculation and negative reasoning are not sufficient to carry Plaintiff's burden of putting forth "positive" evidence that the damage-causing condition existed for some period of time.  *Allen v. Wal-Mart Stores, Inc.*, 850 So. 2d 895, 898 (La. App. 2 Cir. 2003) ("mere speculation or suggestion is not enough to meet the stringent burden imposed upon a plaintiff by LSA-R.S. 9:2800.6."); *Watson v. TJ Maxx*, 2009 WL 1940976, at *3 (E.D. La. July 6, 2009) (rejecting plaintiff's 'negative' reasoning that if plaintiff was in bathroom for 2-3 minutes and if only other person who walked through hallway during another employee's fifteen minute break did not drop the piece of paper on which plaintiff slipped, then piece of paper must have been on the floor for a long period of time.); *Beard v. Dollar General Stores, Inc.*, 2005 WL 399514, at *3 (E.D. La. Feb. 17, 2005) (rejecting as speculative plaintiff's contention that object upon which she slipped "had to be on the floor for ten to fifteen minutes because no one was present in the aisle with her.").

### 2.  Size and Condition of the Spill

Plaintiff correctly points out that, in some cases, the condition of the spill or puddle itself may "indicate that it existed on the floor for some period of time." *Johnson v. Wal-Mart Stores, Inc.*, 2014 WL 7359051 (M.D. La. Dec. 23, 2014) (citing *Allen v. Wal-Mart Stores, Inc.*, 850 So. 2d 895, 898 (La. App. 2 Cir. 2003) ("i.e., that areas of the spill had dried, that there were shopping cart tracks or footprints in the liquid or that the liquid was dirty, evidencing earlier traffic."). In some cases, "circumstantial evidence of a slow leak may be sufficient to prove the temporal element necessary to defeat a motion for summary judgment…." *Flowers v. Wal-Mart Stores, Inc.*, 99 So. 3d 696, 700 (La. App. 5 Cir. 2012).

Plaintiff asserts that because Defendant did not keep the bottle of tire protectant and did not make it available for his inspection, an adverse inference that the liquid leaked slowly out of the bottle should be applied.[24]  However, "[a]n adverse inference based on the destruction of potential evidence is predicated on the 'bad conduct' of the defendant." *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003).  *See also*, *Lucas v. Old Navy, LLC*, 2009 WL 1172710, at *3 (M.D. La. April 28, 2009) ("The adverse evidentiary inference sought by the plaintiff requires a showing of bad conduct or 'bad faith' motive of the defendant."); *Dixon v. Greyhound Lines, Inc.*, 2014 WL 6087226, at *2 (M.D. La. Nov. 13, 2014) ("the law is clear that a party is 'not entitled' to an adverse inference instruction or to have defenses struck from the pleadings *unless* it provides evidence that its adversary intentionally and in bad faith disposed of the evidence.").[25]  Plaintiff

---

[24] R. Doc. 25, pp. 14-15.  *See also*, R. Doc. 25-3, pp. 18-22, September 11, 2016 Deposition of Wal-Mart, pp. 17:3-21:18 (explaining potential disposal options and stating that there is no longer an opportunity to inspect the bottle);

[25] "Generally, federal courts apply their own evidentiary rules in diversity matters*." King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (citing *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993)).  "Evidentiary 'presumptions' which merely permit an adverse inference based on unproduced evidence are, likewise, controlled by federal law." *Id.* (citing *Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1047 (5th Cir. 1990) & *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 341 (5th Cir. 1988)).

does not assert that he asked Defendants to preserve the bottle and has offered no evidence to support a finding of bad faith or bad conduct on the part of Defendants.  Under such circumstances, the Court declines to impose an adverse inference that the bottle was slowly leaking.  *See*, *Lucas v. Old Navy, LLC*, 2009 WL 1172710, at *4 (M.D. La. April 28, 2009) (refusing to impose an adverse evidentiary presumption in slip and fall case where plaintiff never asked defendant to preserve any evidence, had minimal contact with defendant and never told defendant that she intended to file a lawsuit, and offered no evidence to suggest defendant acted in bad faith).

Without Plaintiff's suggested adverse presumption, he is left relying on the size and general condition of the spill.  Plaintiff testified that he slipped on a "splatter" of "clear liquid."[26]  The photo which Plaintiff identified as representative of the area of the accident shows a clear liquid that does not appear to be partially dried, dirty, or show cart tracks or footprints.[27]  While Plaintiff asserted that the photo shows a "smear," he could not say whether that was caused by his own foot or something else.[28]  Although Plaintiff stated that the area of the spill seemed like "a small area to me,"[29] he also testified that it was "a foot-and-a-half, 2 foot" wide.[30]  "At best, the plaintiff's evidence merely establish[es] that sufficient liquid had spilled so as to make a large spill."  *Allen v. Wal-Mart Stores, Inc.*, 850 So. 2d 895, 898 (La. App. 2 Cir. 2003).  Without any other evidence to establish the cause of the spill, such evidence is insufficient to carry Plaintiff's burden.  *See*, *Allen v. Wal-Mart Stores, Inc.*, 850 So. 2d 895, 898 (La. App. 2 Cir. 2003) ("If the spill occurred when the foreign substance was horizontally ejected out of a container, it might not have taken any

---

[26] R. Doc. 14-2, p. 7, August 10, 2015 Deposition of Darren Boles, p. 21:16-21:24.

[27] *See*, R. Doc. 14-2, p. 13.

[28] R. Doc. 14-2, pp. 7-8, August 10, 2015 Deposition of Darren Boles, pp. 21:25-22:10.

[29] R. Doc. 14-2, p. 8, August 10, 2015 Deposition of Darren Boles, p. 22:21.

[30] R. Doc. 14-2, p. 9, August 10, 2015 Deposition of Darren Boles, p. 23:9.

length of time to be spread across six to seven feet of floor.  If, on the other hand, it slowly spilled on one spot on the floor and spread in one direction on a level or nearly level surface for six to seven feet, the passage of some time could be inferred."); *Johnson v. Wal-Mart Stores, Inc.*, 2014 WL 7359051, at *5 (M.D. La. Dec. 23, 2014) ("Plaintiff's testimony regarding the size of the spill, without any specific evidence suggesting that the spill spread over the ground over a significant period of time, is insufficient to establish a genuine issue of material fact regarding whether Defendant had constructive notice of the spill prior to Plaintiff's fall.").  Accordingly, the Court does not find that the size and general condition of the spill are sufficient to carry Plaintiff's burden of establishing constructive notice.

### 3.  Lack of Inspection

Plaintiff argues that Wal-Mart does not document its periodic safety inspections and has no record of inspections of the area prior to the accident.[31]  Plaintiff further argues that, based on the testimony of Jacob Meyers, the service manager in the Tire Lube Express department on the day of the accident, the automotive department where Plaintiff's accident occurred was understaffed.[32]

Based on the testimony of Wal-Mart's corporate representative, Byron Beck, store managers and assistant managers conduct periodic inspections which are not required to be documented.[33]  Department managers also conduct "zone defense" wherein "they zone from 3:00 p.m. to 4:00 p.m. before they go home."[34]  Mr. Beck explained that department managers "walk

---

[31] R. Doc. 25, p. 13.  *See also*, R. Doc. 25, pp. 2-6 (outlining deposition testimony of Wal-Mart and various Wal-Mart employees regarding periodic safety inspections in the form of "zone defense" from 3:00 to 4:00 p.m. and hourly "safety sweeps" and noting that Wal-Mart has no record of safety or zone sweeps).

[32] R. Doc. 25, p. 6.  Mr. Meyers

[33] R. Doc. 25-3, p. 26, September 14, 2015 Deposition of Wal-Mart, p. 25:15-22.

[34] R. Doc. 25-3, pp. 27-28, September 14, 2015 Deposition of Wal-Mart, pp. 26:17-27:2.

every side counter….We want to make sure that the afternoon customers comes in, that everything is clean and neat, and the features are filled up and that it's presentable and safe."[35]  Mr. Beck also explained that "safety sweeps" are called by the hour "and what you're supposed to do is go through the store and everybody stops what they're doing, they walk through the store, they walk through the aisles to make sure there's nothing on the floor…."[36]  Mr. Beck stated that Martha Puckett was the department manager who would have been responsible for "zone defense" on the day of the accident.[37]  Mr. Beck also identified Ms. Puckett as the individual who should have conducted an hourly visual inspection of the area.[38]  However, neither party submits any statement or deposition testimony from Ms. Puckett and Mr. Beck stated in deposition that Ms. Puckett is no longer at the Gonzales store and that he didn't know if she was working at a different location.[39]  Mr. Beck further explained that because the automotive section is not a high accident area, Deborah Lachute would have been assigned to inspect the store (including the automotive department) and would not have been required to document those inspections.[40]  In her post-accident report, Martha Teer, co-manager of the Wal-Mart store, indicated that Ms. Lachute was the last maintenance associate to walk past the area at 2:45 p.m.[41]

---

[35] R. Doc. 25-3, pp. 27-28, September 14, 2015 Deposition of Wal-Mart, pp. 26:17-27:2.

[36] R. Doc. 25-3, p. 28, September 14, 2015 Deposition of Wal-Mart, p. 27:3-9.

[37] R. Doc. 25-3, p. 29, September 14, 2015 Deposition of Wal-Mart, p. 28:11:16.

[38] R. Doc. 25-3, p. 43, September 14, 2015 Deposition of Wal-Mart, p. 42:19-22.

[39] R. Doc. 25-3, p. 30, September 14, 2015 Deposition of Wal-Mart, p. 29:10-19.

[40] R. Doc. 25-3, pp. 33-34, September 14, 2015 Deposition of Wal-Mart, pp. 32:4-33:15.

[41] R. Doc. 25-4, pp. 53-57, February 11, 2016 deposition of Martha Teer, pp. 53:21-57:14.  Ms. Lachute testified that she did not know for a fact that no safety sweeps were done after she walked down the aisle at 2:45.  R. Doc. 25-6, p. 18, January 29, 2016 Deposition of Debra Lachute, p. 17:19-25.  Ms. Teer explained that while she identified Ms. Lachute as the last maintenance associate to go down the aisle, she did not investigate when the associate working the area last passed.  R. Doc. 25-4, p. 57, January 15, 2016 Deposition of Martha Teer, p. 57:2-20.

The Louisiana Supreme Court has rejected the position that a finding of constructive notice can be based on "a lack of uniform, mandatory clean-up procedures" *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1085-86 (La. 1997)  (reversing judgment of lower court which found for plaintiff based on plaintiff's assertion that Wal-Mart employee could have seen the spill from her station in the store and Wal-Mart's failure to produce any evidence to "affirmatively prove when their employees had made their last inspection sweep prior to the accident.").  In so holding, the *White* court overturned *Welch v. Winn-Dixie Louisiana, Inc.*, 655 So. 2d 309 (La. 1995) in which constructive notice had been found based on a lack of uniform, mandatory clean up procedures even though plaintiff made no showing of any period of time and there was no positive evidence of the pre-existence of the spill.   Under this precedent, Defendant is not required to affirmatively prove when its employees made their last safety inspection of the area.  As explained by the court, "the lack of evidence showing the non-existence of the spill is not evidence of the existence of the spill, but merely the absence of evidence.  Because it is the claimant's burden to prove its existence for some period of time, the absence of evidence cannot support the claimant's cause of action.  Rather, the absence of evidence is fatal to the claimant's cause of action."  *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1086 (La. 1997).

Plaintiff relies heavily on *Broussard v. Wal-Mart Stores, Inc.*, 741 So. 2d 65 (La. App. 3 Cir. 1999) to support his position that he has presented sufficient circumstantial evidence to carry his burden.  In *Broussard*, plaintiff slipped in dishwashing detergent while walking down the household chemicals aisle of defendant's store.  *Id*. at 66.  The manager of the household chemicals department was on vacation at the time of the accident, and other employees testified that they did not know who was working in the department at the time of the accident.  *Id*.  As here, no records of defendant's safety inspections were required to be made or kept.  *Id*. at 67.  The *Broussard*

13

Court noted that photos showed that the spill was elongated, "suggesting that it had spread over a period of time," that testimony established that the "accident occurred on the third busiest day of the week in one of the busiest departments of the store," that "[t]his department has had more than its share of slip and fall accidents," and that "evidence supports the conclusion that no one was working in the household chemicals department when the accident occurred." *Id*. at 69. The Court concluded that "[w]hile the evidence that the area was not properly staffed, and thus not properly inspected, is not determinative, combined with the other circumstantial evidence, we find that [plaintiff] has met her burden of establishing that Wal-Mart had constructive notice of the spill." *Id*. at 69.

The Court finds *Broussard* to be distinguishable in a number of ways. First, testimony in *Broussard* established that *no one* was working in the household chemicals department on that day of the accident. As the court noted, "[t]he problem with Wal-Mart's zone defense policy is that it cannot be effective if no one was assigned to work in the area where the accident occurred." *Broussard v. Wal-Mart Stores, Inc.*, 741 So. 2d 65, 69 (La. App. 3 Cir. 1999).[42] In this case, it appears that Martha Puckett was the department manager who was responsible for "zone defense" on the day of the accident. Unlike in *Broussard*, Plaintiff did not submit any statement or deposition testimony from Ms. Puckett. Instead, Plaintiff asks the Court to make a negative inference that Ms. Puckett did not inspect the area without any positive evidence to support that position. Second, based on the photo identified by the Plaintiff as indicative of the spill, the spill was not "elongated" as the spill in *Broussard* was and, as discussed above, nothing about the spill

---

[42] In *Broussard*, plaintiff submitted evidence that the individual whom the store manager testified would have been the employee in charge of safety sweeps was actually working in another department on the day of the accident. 741 So. 2d at 69 (La. App. 3 Cir. 1999). When the store manager was told that the employee previously identified was working in another department, he later changed his testimony to say it was a different employee. *Id*. However, the manager admitted that this second employee only worked until noon and so would not have been in the department at 12:35 p.m. when the accident occurred. *Id*.

at issue here indicates that it existed for a period of time prior to Plaintiff's accident.  Finally, Wal-Mart's corporate representative testified that the automotive section is not a high accident area.[43] In sum, there is not the same sort of additional circumstantial evidence present here that would lead this Court to find *Broussard* persuasive.  *See also*, *Finley v. Racetrac Petroleum, Inc.*, 137 So. 3d 193, 198-99 (La. App. 2 Cir. 2014) (distinguishing *Broussard* and explaining that the photo submitted by plaintiff failed to establish the temporal element of her claim and instead showed "that the oil slick merely existed" and rejecting plaintiff's reliance on the "sparsity of employees or the lack of cleaning or inspection policies," because such arguments "create mere speculation or suggestion that Racetrac knew or should have known about the dangerous condition, which is not enough to meet the stringent burden imposed upon La. R.S. 9:2800.6.").

### III.    Conclusion

For the reasons set forth herein, the Motion for Summary Judgment[44] filed by defendants, Wal-Mart Stores, Inc. and Wal-Mart Louisiana, LLC is GRANTED and Plaintiff's claims are dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on June 17, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[43] In *Broussard*, the slip and fall occurred in the household chemicals area, which the court characterized as "one of the busiest departments in the store" and which had had "more than its share of slip and fall accidents."  741 So. 2d at 69 (La. App. 3 Cir. 1999).

[44] R. Doc. 14.